```
                                )
Stephanie Rauseo and Apple Hill )
Neighbors Group,                )
                                )
          Plaintiffs,           )
                                )
          v.                    )     Civil Action No.
                                )     17-12026-NMG
Army Corps of Engineers, et al.,)
                                )
          Defendants.           )
                                )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This suit arises out of plaintiffs' claim that 1) Marco Tammaro violated federal environmental laws by filling his property with pollutants and 2) the Environmental Protection Agency and the Army Corps of Engineers failed to investigate and sanction Tammaro's noncompliance with federal laws.

I.  **Background**

    A. **Factual Background**

    Stephanie Rauseo ("Rauseo") lives in the Apple Hill neighborhood of Lynnfield, Massachusetts, adjacent to the property at issue in this action ("the Property").  Rauseo, along with a local citizens' group, Apple Hill Neighbors Group ("Apple Hill plaintiffs") (collectively "plaintiffs") allege that Marco Tammaro ("Tammaro"), the owner of the Property,

unlawfully discharged fill into federally protected streams or wetlands without a permit.

Consequently, plaintiffs contacted the Massachusetts Department of Environmental Protection ("DEP"), the Lynnfield Planning Board, the Environmental Protection Agency ("EPA") and the Army Corps of Engineers ("the Corps"). Specifically, plaintiffs complained to the EPA that Tammaro had violated the Clean Water Act ("the CWA") to no avail. In 2016, plaintiffs discovered that Tammaro's developer, Peter Ogren ("Ogren"), provided notice to the Corps that the activities on the Property were exempt from Section 404 of the CWA. In response, plaintiffs urged the New England Engineer of the Corps to enforce the CWA, claiming that neither an individual nor a general Section 404 permit authorized Tammaro's work on the Property.

In November, 2016, the Corps visited the Property without notifying plaintiffs and allegedly made a final Jurisdictional Determination ("JD") with respect to the Property. They have since averred that the Property abuts a conservation area and that the two water streams that run across the Property and into the conservation area are waters of the United States that are subject to EPA drinking water regulations under the Safe Drinking Water Act ("the SDWA").

In November, 2017, plaintiffs sent a 60-day Notice of Intent to Sue ("NOI") under the CWA and the SDWA to Tammaro, representatives of the Commonwealth, the DEP, the U.S. Department of Justice and the EPA. Although plaintiffs did not name the Corps in its NOI, they filed an amended complaint with this Court in April, 2018, in which they allege: CWA violations against Tammaro (Count I), CWA violations against EPA and the Corps ("the federal defendants") (Count II), SDWA violations against Tammaro and the federal defendants (Count III), APA procedural violations against the federal defendants (Count IV), APA substantive violations against the federal defendants (Counts V and VII), improper ex parte communications against all defendants (Count VI) and Sunshine Act violations against the federal defendants (Count VIII). Pending before this Court are motions of the federal defendants and of Tammaro to dismiss for lack of jurisdiction and failure to state a claim.

## II.  **Analysis**

### A. Legal Standard

#### 1. Failure to State a Claim

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face". Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering the merits of a motion to dismiss, the

Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).

Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollet, 83 F. Supp. 2d at 208. Although a court must accept as true all the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009). Threadbare recitals of legal elements which are supported by mere conclusory statements do not suffice to state a cause of action. Id. Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. Id. at 1950.

## 2. Lack of Jurisdiction

With respect to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), plaintiff bears the burden of establishing subject matter jurisdiction. Justiniano v. Soc. Sec. Admin., 876 F.3d 14, 21 (1st Cir. 2017). Under Fed. R. Civ. P. 12(b)(1),

the district court must construe the complaint liberally,
treating all well-pleaded facts as true and indulging all
reasonable inferences in favor of the plaintiff. Aversa v.
United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996).

A plaintiff may not, however, rest merely on "unsupported
conclusions or interpretations of law". Washington Legal Found.
v. Massachusetts Bar Found., 993 F.2d 962, 971 (1st Cir. 1993).
Subjective characterizations or conclusory descriptions of a
scenario that could be overcome by unpled facts will not defeat
a motion to dismiss. Murphy v. United States, 45 F.3d 520, 522
(1st Cir. 1995).

### B. Motion to Dismiss by Federal Defendants

#### 1. Jurisdiction

The federal defendants argue that the citizen suit
provision of the CWA does not explicitly waive the government's
sovereign immunity interest because plaintiffs have failed to
demonstrate that a clearly mandated, nondiscretionary duty
applies. Plaintiffs respond that the EPA and the Corps have
failed to perform the following "mandatory" duties: 1) enforce
the CWA, 2) issue a compliance order to Tammaro and 3)
investigate plaintiffs' complaints against Tammaro.

A waiver of sovereign immunity must be unequivocal and
Sections 505(a)(2) and 1449(a) of the CWA and the SDWA
explicitly waive sovereign immunity with respect to

nondiscretionary duties of the EPA Administrator. Conservation
Law Found., Inc. v. Pruitt, 881 F.3d 24, 28 (1st Cir. 2018); 33
U.S.C. § 1365 (a)(2); 42 U.S.C. § 300j-8(a)(1)-(2).  It is
clearly established, however, that an agency's decision not to
prosecute or take enforcement action is "generally committed to
an agency's absolute discretion". Heckler v. Chaney, 470 U.S.
821, 831 (1985).  In fact, courts have specifically held that
the EPA is not required to investigate every complaint because
it has discretion to investigate and enforce violations it
believes to be the most serious. Sierra Club v. Whitman, 268
F.3d 898, 902-03 (9th Cir. 2001); Dubois v. Thomas, 820 F.2d
943, 946-47 (8th Cir. 1987) (reversing the district court on the
grounds that EPA does not have a mandatory duty under the CWA to
make findings or carry out an investigation of a citizen
complaint).

Accordingly, because plaintiffs' claims relate to the EPA's
failure to issue findings with respect to alleged violations of
the CWA and SDWA, plaintiffs have failed to satisfy the
jurisdictional requirement of a "clearly mandated,
nondiscretionary duty", thus precluding their citizen suits.
Miccosukee Tribe of Indians of Fla. v. U.S., E.P.A., 105 F.3d
599, 602 (11th Cir. 1997) (internal citations omitted); Whitman,
268 F.3d at 901 (holding that if the Administrator acted within
her discretion, the district court properly dismissed for lack

of jurisdiction under the CWA); Garling v. United States Envtl.
Prot. Agency, 849 F.3d 1289, 1296 (10th Cir. 2017) (holding that
Congress delegated broad authority to the EPA to implement and
enforce the SDWA).

For completeness, the Court proceeds to address plaintiffs'
claims under the Administrative Procedures Act ("the APA") and
the Sunshine Act.

### 2. Dismissal under the APA

The APA does not independently confer subject matter
jurisdiction and thus dismissal of plaintiffs' claims under the
CWA and the SDWA presumptively precludes plaintiffs' APA claims.
Even if that were not so and judicial review under the APA were
appropriate, plaintiffs' claims thereunder would fail as well.

The federal defendants allege that plaintiffs lack standing
because they make no allegations of how the government's actions
have injured them uniquely. They fail to address that argument
but instead argue the merits of judicial review under the APA.
Standing is, of course, a threshold question in every case and
plaintiffs' failure to demonstrate injury, causation and
redressability is grounds for dismissal. Summers v. Fin. Freedom
Acquisition LLC, 807 F.3d 351, 355 (1st Cir. 2015).

Again, assuming arguendo that plaintiffs have satisfied the
procedural hurdles of jurisdiction and standing (which they have
not), the APA authorizes judicial review of "final agency action

for which there is no other adequate remedy in a court". 5
U.S.C. § 704.  Under 33 C.F.R. § 331.2, a JD by the Corps that a
wetland and/or waterbody is subject to regulatory jurisdiction
under Section 404 of the CWA must be in writing and either be
identified as preliminary or approved.  Approved JDs, unlike
preliminary JDs, are considered final agency actions and are
appealable.

Here, plaintiffs have not demonstrated that the Corps
reached an approved JD with respect to the Property and evidence
of the Corps' written communications with Tammaro's developer
and with Rauseo herself is not evidence of final agency action.
Cf. Bennett v. Spear, 520 U.S. 154, 177–78, (1997) (holding that
final agency action must 1) mark the "consummation" of the
agency's decisionmaking process, and 2) the action must be one
by which "rights or obligations have been determined" or from
which "legal consequences will flow"); see also 5 U.S.C. §
551(13) (agency action is to include "the whole or a part of an
agency rule, order, license, sanction, relief, or the equivalent
or denial thereof, or failure to act").  In the clear absence of
an approved JD, plaintiffs cannot claim judicial review of a
final agency action under the APA.

Nor does the Corps' alleged failure to provide plaintiffs
with a written explanation of its evaluation of the Property
constitute a reviewable "final action" because judicial review

of agency inaction under the APA is initiated where the inaction occurs in the face of a nondiscretionary duty to act. Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004) (holding that a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take).  Again, plaintiffs have not sufficiently pled that the federal defendants failed to fulfill any mandatory duty.  As such, no judicial review of defendants' decision to forego an enforcement action is warranted.

To the extent plaintiffs raise a due process challenge, they have failed to contest defendants' argument that plaintiffs have not been deprived of a property or liberty interest in the first place. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999) (holding that only after finding the deprivation of a protected interest do courts look to see if the government's procedures comport with due process).  Accordingly, plaintiffs' due process claim is to no avail.

Finally, the APA prohibits ex parte communications in the context of formal adjudications but not with respect to informal adjudications. 5 U.S.C. § 557(d)(1)(A); Portland Audubon Soc. v. Endangered Species Comm., 984 F.2d 1534, 1539 (9th Cir. 1993). Pursuant to 33 C.F.R. § 325.1(b), the Corps may 1) advise potential permit applicants of "studies or other information foreseeably required for later federal action" and 2) involve

other affected parties, including the public, although such communications are not required. Id.  Accordingly, the Corps did not engage in improper ex parte communications by providing information to Tammaro or refusing to include plaintiffs as part of their pre-application consultation discussions.

Thus, even if plaintiffs were entitled to judicial review under the APA, for the foregoing reasons, the federal defendants' motion to dismiss under the APA will be allowed.

### 3. Dismissal under Ex Parte Contacts and the Sunshine Act

The Sunshine Act requires that certain multi-member federal agencies conduct open meetings unless a confidentiality exemption applies. 5 U.S.C. § 552b(a)(2).  The Sunshine Act does not apply to either the EPA or the Corps and, moreover, the Corps has promulgated regulations with respect to pre-application consultations which do not require public participation. 33 C.F.R. § 325.1(b).  Nor can this Court impose procedural requirements beyond those required by statute or APA unless required by the U.S. Constitution. Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc., 435 U.S. 519, 543–45 (1978).  Accordingly, plaintiffs have failed to establish a claim of improper ex parte communications under the Sunshine Act, the APA or the U.S. Constitution and defendants' motion to dismiss will be allowed.

**C. Motion to Dismiss by Tammaro**

**1. Jurisdiction**

In the context of citizen suits, compliance with the 60-day notice provision is a mandatory condition precedent for suit that plaintiffs must satisfy. <u>Hallstrom</u> v. <u>Tillamook Cty.</u>, 493 U.S. 20, 26 (1989). Because they have failed to identify with specificity the members, phone numbers and information of the Apple Hill Neighbors Group ("Apple Hill plaintiffs"), Tammaro's motion to dismiss with respect to the Apple Hill plaintiffs will be allowed. <u>Garcia</u> v. <u>Cecos Int'l, Inc.</u>, 761 F.2d 76, 81 (1st Cir. 1985) (strictly adhering to the statutory provisions for citizens' suits in environmental litigation); <u>Washington Trout</u> v. <u>McCain Foods, Inc.</u>, 45 F.3d 1351, 1354 (9th Cir. 1995) (holding that failure to provide notice of other plaintiffs is grounds for dismissal because but for the notice, defendants were not in a position to negotiate with the plaintiffs or seek an administrative remedy).

With respect to the content of the pre-suit notice, Tamarro argues that plaintiffs' NOI lacks the requisite specificity because it does not refer to: 1) a specific standard, limitation or order violated, 2) dates of the alleged violations, 3) the pollutants being discharged or 4) the location of the alleged pollution.

Plaintiffs' failure to name a particular pollutant is not dispositive as to the sufficiency of pre-suit notice. <u>Paolino</u> v. <u>JF Realty, LLC</u>, 710 F.3d 31, 37 (1st Cir. 2013) (holding that while other circuits have required notice of a particular pollutant to withstand a sufficient challenge, the First Circuit has not explicitly adopted that position). Moreover, the CWA's definition of "pollutant" is broad and plaintiffs allege in their NOI that Tammaro's fill includes debris, pipes and concrete. 33 U.S.C. § 1362(6) (the term "pollutant" means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water). Viewing the record in favor of the nonmoving party, the Court finds that plaintiffs have sufficiently provided Tammaro with notice of the alleged pollutant.

Moreover, the Court finds that plaintiffs have pled with sufficient specificity the violations alleged, namely, that defendants placed fill without a permit in violation of CWA Section 404, obstructed or filled a navigable waterway of the United States, tampered with a public water supply, etc.

Thus, because plaintiffs' NOI placed Tammaro on notice and in a position to remedy the violations alleged, the Court

declines to dismiss plaintiff's CWA claim against Tammaro on the basis of subject matter jurisdiction. <u>Paolino</u>, 710 F.3d at 37.

### 2. Prior Violations

The CWA and SDWA do not confer federal jurisdiction over citizen suits for "wholly past" violations. <u>Gwaltney of Smithfield, Ltd.</u> v. <u>Chesapeake Bay Found., Inc.</u>, 484 U.S. 49, 63, (1987); <u>Mattoon</u> v. <u>City of Pittsfield</u>, 980 F.2d 1, 6 (1st Cir. 1992). Citizen suits may proceed, however, if plaintiffs have made a good faith allegation of continuous or intermittent violation. <u>Gwaltney</u>, 484 U.S. at 64. Viewing all reasonable inferences in favor of the nonmoving party, the Court finds that Tammaro's alleged pollution of two streams with dirt constitutes a continuous and ongoing violation. Accordingly, the Court declines to dismiss plaintiffs' claims under either the CWA or the SDWA on the basis of wholly past violations.

### 3. Standing

Tammaro contends that plaintiffs have not demonstrated any concrete or actual injury, either individually or as a group, because the alleged interference with the streams has no direct bearing on the plaintiffs themselves. Plaintiffs respond that the harm is not speculative because the drinking water has become non-potable. The Court declines to consider plaintiffs' recently proffered water report conducted by Ms. Langham because it is untimely and its authenticity is in dispute. <u>Watterson</u> v.

Page, 987 F.2d 1, 3 (declining to take judicial notice of documents whose authenticity is in dispute).  It does find, however, that plaintiffs have sufficiently pled a cognizable injury in their amended complaint in that they allege that the runoff from Tammaro's property has deposited pollutants into plaintiffs' drinking water.

Tammaro ultimately prevails on the other prongs of the standing analysis, however, because plaintiffs have failed to prove both traceability and redressability. Lujan, 504 U.S. at 560 (1992) (holding that a litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent, the injury is fairly traceable to the defendant and it is likely that a favorable decision will redress that injury).  In their opposition, plaintiffs concede that even the Lynnfield Water District is unsure of the cause of the poor drinking water quality.  Thus, even if plaintiffs could demonstrate a causal connection between Tammaro's alleged pollution and the cognizable harm, relief by this Court would not remedy the alleged harm of non-potable drinking water.  As such, plaintiffs have failed to satisfy standing requirements and Tammaro's motion to dismiss with respect to plaintiffs' SDWA claim will be allowed.

**4. Ex Parte Communications**

As noted previously, the APA's prohibition on ex parte communications applies to formal adjudication and rulemaking. Because plaintiffs' claims do not relate to formal proceedings and the Corps retains discretion with respect to pre-permit communications, plaintiffs have failed to state a cause of action with respect to improper ex parte communications.

**ORDER**

For the foregoing reasons, the federal defendants' motion to dismiss (Docket No. 57) is **ALLOWED**, and Tammaro's motion to dismiss (Docket No. 59) is, with respect to plaintiffs' SDWA and ex parte communications claims, **ALLOWED**, but is, with respect to plaintiffs' CWA claims, **DENIED**.  The Apple Hill Neighbors Group is dismissed as a party-plaintiff to this suit.

**So ordered.**

_/s/ Nathaniel M. Gorton____
Nathaniel M. Gorton
United States District Judge

Dated March 26, 2019